UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHAW CONSTRUCTORS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-cv-08174** |
| **HPD, LLC** | **SECT. "C" MAG.(3)** |

### ORDER AND REASONS[1]

This matter comes before the Court on cross-Motions for Summary Judgment filed by Plaintiff Shaw Constructors, Inc. (Rec. Doc. 38) and by Defendant HPD, LLC (Rec. Doc. 41). Having considered the record, memoranda of counsel and the applicable law, Plaintiff's Motion for Summary Judgment is hereby DENIED and Defendant's Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART.

**I. Background**

Shaw Constructors, Inc. ("Shaw") is a Louisiana corporation that provides construction services, with its primary place of business in Baton Rouge, Louisiana. HPD, LLC ("HPD") is a Delaware limited liability corporation with a primary place of business in Plainfield, Illinois. (Rec. Doc. 41-2 at 2). HPD's business involves providing services to its customers' industrial plants in the form of technology, design, fabrication and installation of specialized equipment. (Rec. Doc. 41-2 at 2). The relationship between the parties began in 2005, after HPD executed a contract with Shintech Louisiana, LLC, ("Shintech") to provide specialized construction services at Shintech's chemical processing plant in Plaquemine, Louisiana. (Rec. Doc. 38-1 at 1). According to the

---

[1] Gillian Gurley, a third-year student at Tulane University Law School, assisted in the preparation of this document.

agreement between HPD and Shintech, HPD was to enter into subcontracts under which the work for Shintech would be performed ("the Project"). (Rec. Doc. 38-1 at 2). Shaw Constructors was such a subcontractor, and it was arranged that Shaw would perform work in connection with HPD's contract with Shintech (the "Trade Contract"). (Rec. Doc. 38-4 at 1). A written contract was never signed between the parties, though multiple versions of the Trade Contract were exchanged between them. (Rec. Doc. 38-1 at 7). Despite the absence of a signed contract, Shaw began work on the Project. (Rec. Doc. 38-4 at 1). Shaw allegedly completed $4.3 million dollars worth of work on the Project before the relationship completely broke down. (Rec. Doc. 38-1 at 6).

In December of 2006, HPD filed a complaint against Shaw in the United States District Court for the Northern District of Illinois, seeking among other things, a declaration that the Trade Contract was enforceable. (Rec. Doc. 38-1 at 5; Rec. Doc. 41-1 at 15). On March 16, 2007, Shaw submitted an email to the Louisiana State Licensing Board for Contractors ("the Licensing Board"), alleging that HPD was operating without the proper construction license. (Rec. Doc. 38-1 at 3). The Licensing Board sent a "Report of Apparent Violation" to HPD on March 22, 2007, and subsequently sent HPD a "Cease and Desist Order" on April 9. (Rec. Doc. 45-2 at 3-4). HPD did cease work on the Project, and applied for an additional license classification which it was granted after an employee passed a certification exam. (Rec. Doc. 38-1 at 4). The Licensing Board subsequently notified HPD that it was allowed to resume work on the Project (Rec. Doc. 38-1 at 4). No administrative hearing took place, and the Licensing Board took no further punitive action. (Rec. Doc. 38-1 at 5; Rec. Doc. 45-2 at 4). On May 16, 2007, HPD terminated Shaw. (Rec. Doc. 41-2 at 17).

In July of 2007, Shaw filed suit against HPD and Shintech in the 18th Judicial District Court of Iberville Parish, Louisiana. (Rec. Doc. 38-4 at 1). HPD subsequently filed a removal action in the

U.S. District Court for the Middle District of Louisiana. (Rec. Doc. 38-4 at 1-2). Instead of continuing to pursue a judicial remedy, however, the parties agreed in October of 2007 to submit their dispute to arbitration under the aegis of the American Arbitration Association ("AAA"). (Rec. Doc. 38-4 at 2).

The parties signed an arbitration agreement styled "Mediation and Arbitration Agreement" on October 31, 2007, which provided among other things that "the Parties shall submit all unresolved issues between them to binding arbitration[.]" (Rec. Doc. 38-4 at 5). On June 30, 2010, a three-arbitrator panel rendered an award in favor of HPD ("the Award"). (Rec. Doc. 38-4 at 5; Rec. Doc. 38-3 at 3). The Award stated that HPD had sufficient cause to terminate Shaw, and ordered that Shaw pay $317,221 to HPD, plus $390,474 for attorneys' fees. (Rec. Doc. 38-3 at 1, 3). The Award also ordered that Shaw discharge a lien claim it had made on Shintech's property. (Rec. Doc. 38-3 at 2). On August 16, 2010, Shaw filed a Motion for Summary Judgment to vacate the Award in this Court. (Rec. Doc. 38). On August 17, 2010, HPD filed a Motion for Summary Judgment to confirm the Award in this Court. (Rec. Doc. 41).

In its Motion, Shaw alleged that the arbitrators exceeded their powers, acted in manifest disregard of the law, and violated Louisiana public policy in making the Award. (Rec. Doc. 38 at 2-3). HPD, in turn, alleges that the Award was properly made, and that the Court must confirm the Award in its favor under the Federal Arbitration Act, 9 U.S.C. §1 *et seq*.

## II. Standard of Review

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the

absence of genuine issues of material fact and of showing the court that it has a legal basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets this initial burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552. The parties have each made motions for summary judgment, and each motion will be treated separately, reviewing evidence in the light most favorable to the non-moving party. *Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493 (5th Cir. 2001). Each party bears its own initial burden of proving that no dispute over a material fact exists. In the Fifth Circuit, "[i]n situations involving cross-motions for summary judgment and upon finding no genuine issues of material fact, this court regularly reverses grants of summary judgment and enters judgment for the opposite party." *Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001) (internal citations omitted).

### III. Law and Analysis

### A. Judicial Review under the Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides the means for enforcing arbitral awards, via a judicial decree confirming, vacating, modifying or correcting an award. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). The Court's review of an arbitral award made under the FAA is exceedingly deferential. *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380 (5th Cir. 2004). "The federal courts will defer to the arbitrators' resolution of the dispute whenever possible." *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990). Neither a mistake of fact nor a mistake of law made by the arbitrator is grounds for vacating an arbitral award. *Apache Bohai Corporation LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007), *citing Brabham*, 480 F.3d at 380.

Under the Federal Arbitration Act ("FAA"), there are four means by which an arbitration award may be vacated. 9 U.S.C. §10. These are, (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or any of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(1)-(4). Courts must confirm an arbitration award unless it is vacated, modified, or corrected as sections 10 and 11 of the FAA allow.[2] *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009), *quoting Hall Street*, 552 U.S. at 587.

**B. Non-Statutory Grounds for Vacatur of an Arbitral Award**

Since the enactment of the FAA, several non-statutory grounds for vacatur have been submitted to the courts, one of which is that the arbitrators acted in "manifest disregard" of controlling law. *Apache Bohai*, 480 F.3d at 405. This ground for vacatur sprung from dicta in the Supreme Court decision of *Wilko v. Swan*, 346 U.S. 427, 436 (1953), where the Court acknowledged the limited statutory grounds for vacating an arbitral award and stated that "interpretations of the law by arbitrators, in contrast to manifest disregard are not subject, in federal courts, to judicial review

---

[2] 9 U.S.C. § 11 reads in part, "the United States court...may make an order modifying or correcting the award upon the application of any party to the arbitration–(a) Where there was an evident material miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award. (b) Where the arbitrators have awarded on a matter not submitted to them....(c) Where the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. Section 11 is immaterial in this case because neither party applied for modification or correction of the award.

5

for error in interpretation." This passing reference opened the door to lower courts to form a "manifest disregard of the law" standard. In the Fifth Circuit, this theory was validated as a judicially-created rule for vacatur. *Williams v. Cigna Fin. Advisors, Inc.*, 197 F.3d 752, 759 (5th Cir. 1999); *Apache Bohai*, 480 F.3d at 405.

In 2008, the Supreme Court decided *Hall Street Associates v. Mattel, Inc.*, in which it held that the statutory grounds contained in the FAA are the exclusive means by which an arbitral award may be vacated. 552 U.S. at 584. The Court did not, however, explicitly reject the manifest disregard standard, instead musing "[m]aybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them….Or, as some courts have thought, 'manifest disregard' may have been shorthand for § 10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were 'guilty of misconduct' or 'exceeded their powers.'" *Id.* at 1404 (internal citations omitted).

In *Citigroup Global Markets, Inc. v. Bacon*, the Fifth Circuit considered whether or not manifest disregard survived *Hall Street*. 562 F.3d at 350. The court concluded that "*Hall Street* restricts the grounds for vacatur to those set forth in § 10 of the Federal Arbitration Act…consequently, manifest disregard of the law is no longer an independent ground for vacating arbitration awards under the FAA." *Id.* at 350. In 2010, the Supreme Court decided *Stolt-Nielsen S.A. v. AnimalFeeds International Corporation*, 130 S.Ct. 1758, 1768 n. 3 (2010), in which it stated "[w]e do not decide whether manifest disregard' survives our decision in *Hall Street*[.]" The Fifth Circuit has not responded to *Stolt-Nielsen* and therefore *Bacon*'s refusal to recognize "manifest disregard" as a separate ground for vacatur remains the rule in this Circuit. 562 F.3d at 350.

Another non-statutory ground for vacatur that gained traction after the enactment of the FAA is that an award violates public policy. The Supreme Court in *United Paperworkers International*

6

*v. Misco*, 484 U.S. 29 (1987), stated that a refusal to enforce an arbitral award which is against public policy is "a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Id.* at 42, *citing W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983). In the Fifth Circuit, "[a]lthough the public policy exception to our usual deference is not to be invoked lightly, a court may exercise its judicial power to abrogate a private agreement when, for example, it gives short shrift to the public's important yet unrepresented interests." *Gulf Coast Industrial Workers Union v. Exxon Co. U.S.A.*, 991 F.2d 244, 249 (5th Cir. 1993). The public policy exception can be invoked only when that public policy is "explicit, well defined, and dominant." *Prestige Ford v. Ford Dealer Computer Services, Inc.*, 324 F.3d 391, 396 (5th Cir. 2003)(overruled on other grounds), *quoting W.R. Grace & Co.*, 461 U.S. at 766 (internal quotations omitted).

To determine if an arbitral award violates public policy, the Court must "review existing laws and legal precedents in order to demonstrate that they establish a well-defined and dominant policy." *Continental Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 555 F.3d 399, 416 (5th Cir. 2009).

### C. Shaw's Motion for Summary Judgment

Shaw moves for summary judgment to vacate the arbitration award in favor of HPD. (Rec. Doc. 38). To succeed, Shaw bears the burden of demonstrating that the arbitration award is invalid as a matter of law, and that there are no genuine issues of material fact. Fed.R.Civ.P. 56(c). As described in the following sections, Shaw does not meet its burden.

It is well established that courts apply a highly deferential standard when reviewing an arbitration award. *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d. 491, 494 (5th Cir. 2003). "If the award is rationally inferable from the facts before the arbitrator, we must affirm the award." *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 214 (5th Cir. 1993).

Shaw argues that the arbitrators' Award should be vacated on three grounds. First, it claims that the arbitrators exceeded their powers. (Rec. Doc. 38 at 3). This ground for vacatur comes from Section 10(a)(4) of the FAA, which states that a district court may vacate an award "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The second alleged ground is that the arbitrators "willfully refused to apply governing law that was known to them," also known as the "manifest disregard" standard. (Rec. Doc. 38-25 at 2). The final reason Shaw sets forth in support of vacatur is that the Award is in violation of Louisiana public policy. (Rec. Doc. 38 at 2). The Court will address each argument in turn.

### i. Did the Arbitrators Exceed Their Powers?

Because arbitration is a matter of contract, the Court must examine the language of the arbitration agreement to determine its scope, before it can determine if the arbitrators exceeded their powers. *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002). If arbitrators act "contrary to express contractual provisions" or ignore plain limitations on their power in the arbitration agreement, they have exceeded their powers and the resulting award may be vacated by a reviewing court. *Apache Bohai*, 480 F.3d at 401, *quoting Delta Queen Steamboat Co. v. AFL-CIO*, 889 F.2d 599, 604 (5th Cir. 1989). An arbitration panel exceeds its power if it decides an issue not submitted to it by the parties, because "[a]n arbitrator can bind parties only on issues that they have agreed to submit to arbitration[.]" *Internat'l Assoc. of Machinists & Aerospace Workers, District 776 v. Texas Steel Co.*, 639 F.2d 279, 283 (5th Cir. 1981), *citing Piggly Wiggly Operator's Warehouse, Inc. v. Piggly Wiggly Operator's Warehouse Indep. Truck Drivers' Union Local No. 1*, 611 F.2d 580 (5th Cir. 1980). The Court must therefore decide if the parties agreed to submit the question of whether an enforceable agreement existed between the parties to arbitration.

8

The arbitration agreement between Shaw and HPD provides:

> Unless otherwise expressly excluded…any controversy or claim between Shaw and HPD arising out of or relating to one or more of the following shall be submitted to arbitration and settled by arbitration; (i) the Project, (ii) payment allegedly owed for Work performed in connection with the Project or at the Plant, (iii) the performance or alleged non-performance of Work in connection with the Project or at the Plant, (iv) damages allegedly incurred as the result of or arising out of the Project, (v) alleged deficiencies in the timeliness, quality, or appropriateness or completeness of Work performed in connection with the Project or at the Plant, or allegedly agreed to be performed in connection with the Project or at the Plant, (vi) *the existence, terms, meaning and/or effect of any agreement between the Parties relating to the Project*….By way of clarification and without reducing the breadth of the aforesaid, it is the Parties' intentions to submit to arbitration all claims and defenses pleaded by either Party in either or both of the Illinois Lawsuit and the Louisiana Lawsuit[.] (Rec. Doc. 38-4 at 5) (emphasis added).

The parties clearly granted the arbitrators the power to decide if an agreement between the parties existed. The arbitrators found that an agreement did exist, and made an award accordingly. Thus, the arbitrators did not exceed their powers under 9 U.S.C. § 10(a)(4) when they issued an award in favor of HPD.

Shaw claims that *Executone Information Systems, Inc. v. Davis*, 26 F.3d 1314 (5th Cir. 1994), supports its claim that the arbitrators exceeded their powers. (Rec. Doc. 38-25 at 8). In *Executone*, the Fifth Circuit stated, "we must affirm the arbitrator's decision if it is rationally inferable from the letter or the purpose of the underlying agreement." 26 F.3d at 1320, *citing Anderman/Smith*, 918 F.2d at 1218. Shaw reads this to mean that this Court, in reviewing the Award's validity, must look at whether the Trade Contract exists between Shaw and HPD, and presents its evidence that the Trade Contract never came into being. (Rec. Doc. 38-25 at 8-13). According to Shaw, this alleged absence of an underlying agreement deprives the arbitrators of the power to grant relief. *Id*. at 9.

To determine whether or not the arbitrators exceeded their powers, however, this Court does

9

not look to the Trade Contract, but to the written arbitration agreement between the parties. The arbitral award must "draw its essence" from whatever agreement gives the arbitrators their power; here, that is the "Mediation and Arbitration Agreement" of October 31, 2007. (Rec. Doc. 38 at 3; Rec. Doc. 38-4).

The arbitration agreement was drafted separately from the Trade Contract, and the arbitrators owed "fidelity" to the terms of that document, not the disputed Trade Contract. (Rec. Doc. 38-25 at 8). Though most arbitration agreements are contained within a contract for goods or services, and thus arbitrators must look at the underlying agreement to determine its purpose and the scope of their powers, here the parties formed a separate agreement to arbitrate. That agreement describes *in toto* the scope of the arbitrators' powers, and it is that document which governs the question of whether or not they exceeded their powers.

Because we find that the parties agreed to submit the question of the existence of a Trade Contract to the arbitrators, we cannot vacate the arbitrators' Award for exceeding the authority granted to them by the parties.

### ii. Did the Arbitrators Act in Manifest Disregard of the Law?

Shaw also argues two non-statutory grounds for vacatur, the first of which is that the arbitrators acted in "manifest disregard" of the law. (Rec. Doc. 38 at 2). For many years in this Circuit, manifest disregard was grounds for vacating an arbitral award. *See Williams*, 197 F.3d at 759, *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). As explained in Section III(B), however, the Fifth Circuit no longer recognizes manifest disregard as a ground for vacatur. *Bacon*, 562 F.3d at 350.

### iii. Did the Arbitral Award Violate Public Policy?

In its last argument, Shaw alleges that the arbitral award is contrary to Louisiana public policy because it rewards HPD for violating Louisiana's contractor licensing laws. (Rec. Doc. 38 at 2). To determine if this is so, the Court must examine the existing law, its purpose, and whether the Award would truly violate public policy if left intact. In *W.R. Grace & Co.*, the Supreme Court set out factors for consideration: the Court will not enforce an award that violates an explicit public policy, as long as that policy is "well defined and dominant," and is not based on "general considerations of supposed public interest." 461 U.S. at 766 (internal quotations omitted).

Shaw argues that Louisiana law "communicates a clear public policy of punishing contractors" working in violation of the state's licensing requirements. (Rec. Doc. 46 at 1). Louisiana Revised Statute 37:2150 states that the purpose of the contractor licensing laws is "the protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract." La.R.S. 37:2150 (1989). The statute provides that contractors be licensed in their specific area of construction, and that they are limited to working only within their classification. La.R.S. 37:2159. Section 2160 states that contractors are prohibited from contracting without the proper license. La.R.S. 37:2160. The statute creates a State Licensing Board of Contractors whose duty it is to administer the Chapter and promote regulations pursuant to it. La.R.S. 37:2153. The Board's enumerated powers include granting licenses to qualified contractors, suspending or revoking licenses, and issuing cease and desist orders to stop work. La.R.S. 37:2153, 2158.

Under Louisiana law, any person may make an allegation to the Board that a contractor is engaging in business without the Board's authority. La.R.S. 37:2160. In this case, Shaw sent an

11

email to the Louisiana State Licensing Board for Contractors on March 16, 2007. (Rec. Doc. 38-1). This email contained an allegation that HPD did not have the proper contractor's license when it made its contract with Shintech, stating that HPD was licensed in "Specialty: Fabricate and Install Specialized Industrial Equipment," when it should have also been licensed in "Heavy Construction" or "Industrial Plants." (Rec. Doc. 38-7 at 1); La.R.S. 37:2159. Shaw also included relevant sections of the statute with certain subsections in bold for the benefit of the Board. (Rec. Doc. 38-7 at 2).

The Board subsequently created a Report of Apparent Violation and issued HPD a Cease and Desist Order on April 9, 2007. (Rec. Docs.38-8 and 38-9). The Cease and Desist Order states that "If HPD, LLC does not cease or desist the proscribed activity, conduct, or practice immediately, the Board may have cause to issue in any court of competent jurisdiction and proper venue a writ of injunction enjoining you from engaging in any activity, conduct, or practice prohibited by this Chapter." (Rec. Doc. 38-9). In a letter dated April 18, 2007, the Board sent a certified letter to HPD employee John Robertson, stating "[t]he Board may call an administrative hearing on this matter."(Rec. Doc. 38-10). To ameliorate this apparent deficiency in its licensing, HPD then sought to amend its classification to include "Heavy Construction," and the Board approved the new certification on May 18. (Rec. Doc. 38-11).

It is true that the contractor licensing law of Louisiana provides that contractors may not operate without the proper license. And, from the evidence presented, it is possible that when it embarked on its contract with Shintech, HPD did not have all of the necessary classifications. The existing law grants the Licensing Board the authority to pursue sanctions against contractors operating in violation, to fulfill the policy mandate of protecting "against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors." La.R.S. 37:2150, 2158-2162. Apart from issuing a Cease and Desist Order while it investigated, the Board did not take final

administrative action against HPD or make any formal finding that the company was operating in willful violation of the laws.

The Licensing Board is the entity in the best position to determine violations and issue sanctions. Because it did not pursue any formal administrative actions against HPD, the Court will not make the leap to find that HPD acted in violation of public policy or that the arbitration Award ratified such conduct. The Award does not violate a specific provision of any law or regulation, and HPD's actions to remedy its certification deficiency do not indicate "incompetent, inexperienced, unlawful, and fraudulent acts," the likes of which the law was passed to prevent. La.R.S. 37:2750. The parties submitted detailed evidence on the licensing matter to the arbitrators, nor does Shaw provide evidence establishing that an "explicit, well-defined and dominant public policy" exists and was violated. *Prestige Ford*, 324 F.3d at 396.

The Court finds that Shaw does not meet its burden on any of its arguments for summary judgment to vacate the arbitration Award. The parties agreed to arbitrate their disputes in a broadly-worded arbitration agreement; the arbitrators did not exceed their powers, nor was the award in manifest disregard of prevailing law or against public policy of the state of Louisiana. Shaw's Motion for Summary Judgment to vacate the arbitral award is DENIED.

**D. HPD, LLC's Motion for Summary Judgment**

HPD moves for summary judgment to confirm the arbitral Award and for other relief, pursuant to the arbitral Award and based on this Court's equitable discretion. The Court must grant an order confirming an arbitral award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [that] title." 9 U.S.C. § 9. An arbitral award only needs to be "rationally inferable" from the facts before the arbitrators; whether or not a court agrees with the arbitrators' interpretation of the underlying agreement is not relevant, and mistakes of fact or law

are not enough to vacate. *See Valentine Sugars*, 981 F.2d at 214; *Anderman/Smith*, 918 F.2d at 1218 (internal citations omitted). HPD's motion is GRANTED as to confirmation of the arbitral Award and interest on the Award, and DENIED as to all other claims.

### i. The Facts Before the Arbitrators Rationally Support Their Award

In reviewing the Award, the Court looks at the facts presented to the arbitrators. "If the award is rationally inferable from the facts before the arbitrator, [the court] must affirm the award." *Valentine Sugars* at 214. The Court finds that the Award was rationally inferable from the facts presented. In the Fifth Circuit, "arbitrators are not required to disclose or explain the reasons underlying an award." *Antwine v. Prudential Bache Securities*, 899 F.2d 410, 412 (5th Cir. 1990); *see also Valentine Sugars*, 981 F.2d at 214. Here, the arbitrators issued an "unreasoned" award; that is, one without detailed explanation of the reasoning behind their decision. (Rec. Doc. 38-3). This was apparently by design: the parties asked for a "Standard Award" under American Arbitration Association rules, so "the Arbitrators did not describe exactly the terms of the contract they found...or which documents reflected the terms of that contract."(Rec. Doc. 41-1 at 24).

The evidence submitted to the arbitrators was voluminous, and included 120 pages of pre-hearing briefs, hundreds of pages of sworn witness testimony, and hundreds of exhibits. (Rec. Doc. 41-3 at 10). By the terms of the Mediation and Arbitration Agreement, Shaw and HPD both submitted a Consolidated Statement of Claims, Defenses and Responses to the Arbitrators. (Rec. Doc. 47-2; Defendant's Exhibit 11). In HPD's Statement of Claim, it alleged that Shaw failed to perform its work on the Project properly and in a timely manner, causing increased costs to HPD. (Defendant's Exhibit 11 at 9-11). HPD claimed Shaw anticipatorily breached the parties' agreement and defaulted in its performance of the agreement. (Rec. Doc. 41-1 at 8).

In support of its allegations, HPD submitted to the arbitrators a copy of the Revised Trade

Contract, which included a clause prohibiting Shaw from filing any lien. (Defendant's Exhibit 11 at 6; Defendant's Exhibit 12 at 5). The submitted Trade Contract also provides that HPD may terminate Shaw for cause, including failure to perform work promptly and diligently, causing delay to the Project, and failing or refusing to perform any material obligations under the Trade Contract. (Defendant's Exhibit 11 at 8). In its submission to the arbitrators, HPD included a letter sent to it by Shaw in December of 2006, which alleged that no contract between the two had been formed. (Defendant's Exhibit 11 at 10). This letter was dated exactly five months after Shaw submitted its first draft construction schedule for the Project and after Shaw had actually started significant work on the Project. (Defendant's Exhibit 11 at 9).

On March 16, 2007, HPD submitted a letter to Shaw which notified Shaw that it was in material breach of the Trade Contract, and demanded that Shaw advise HPD in writing of its intended course of action to remedy the default. (Defendant's Exhibit 11 at 10). This letter was also submitted to the arbitrators. (Defendant's Exhibit 11 at 11). According to HPD's Statement of Claim, Shaw never meaningfully responded to that letter, but Shaw did submit notice to the Louisiana State Licensing Board for Contractors that HPD was in violation of certain classification standards on March 16, 2007. (Defendant's Exhibit 11 at 10; Rec. Doc. 38-7). On May 16, 2007, HPD terminated Shaw in a letter that was also submitted to the arbitrators. (Defendant's Exhibit 11 at 11).

From the evidence submitted, the Arbitrators determined that the Trade Contract existed, and that Shaw breached its terms. (Rec. Doc. 38-3). The low hurdle for determining if the Award is rationally inferable from the facts before the arbitrators is met here. The parties each had "an adequate opportunity to present [their] evidence and arguments" to the arbitrators. *Rent-A-Center*, 633 F.Supp. 2d at 253, *citing Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1023

15

(5th Cir. 1990). "[T]he minimum standards of fundamental fairness were met." *Prestige Ford*, 324 F.3d at 395.

A binding agreement exists where there is a manifestation of mutual assent, and mutual assent may be made through a course of dealings. Restatement (Second) of Contracts § 22 (1981). Therefore, a binding agreement may be formed without a written contract. The parties exchanged several versions of the Trade Contract between themselves, each alleging–at different points in the dispute–that a contract was formed when their version of it was proffered. (Rec. Doc. 38-25 at 11; Rec. Doc. 45 at 10). Though the parties had not agreed on certain terms, HPD sent Shaw a "Notice to Proceed" on June 16, 2006, and Shaw began work at the Project site on June 29, 2006. (Rec. Doc. 45 at 11).

Shaw cites *Breaux Bros. Construction Co. v. Associated Contractors*, 226 La. 720 (La. 1954), in support of its argument that no binding agreement was formed. (Rec. Doc. 38-25 at 10-13). In *Breaux Bros.*, the Louisiana Supreme Court refused to award the plaintiff for breach of an alleged oral contract to move dirt from drainage canals, because it found the contract never came into existence. 226 La. at 730. "Since the parties in the instant case intended from the beginning to reduce their negotiations to a written contract, neither the plaintiff nor the defendant was bound until the contract was reduced to writing and signed by them." *Id*. at 729. Though Shaw and HPD presented evidence that a written agreement was contemplated, *Breaux Bros*. is distinguishable because in that case, no work was ever undertaken. If there was evidence here that the parties agreed to put their agreement in writing before commencing any work, *Breaux Bros*. would be persuasive. Instead, the facts support a finding that Shaw and HPD were in substantial agreement when Shaw undertook work on the Project, and that the parties had not signed a variation of the Trade Contract because they disagreed as to certain details. *See O'Glee v. Whitlow*, 756 So.2d 1288, 1292 (La. App.

16

2 Cir., 2000) (finding that actions suggesting consent to the agreement constitute substantial performance, and a party cannot withdraw because the agreement was not reduced to writing). It is apparent to the Court from the evidence presented, that the arbitrators could have reasonably inferred that a contract existed between the parties.

### ii. Confirming the Arbitrators' Award

As stated above, the Court finds that all of the requirements for confirmation, and none of the grounds for vacatur, were met by the Award. In the Award, the arbitrators ordered Shaw to pay HPD (1) $317,221 as the net amount owed under the Trade Contract, (2) $55,477 in interest on that amount from October 31, 2007 to June 30, 2010, the date of the Award, and (3) $390,474 in attorneys' fees, for a sum totaling $763,172. (Rec. Doc. 38-3 at 3). The Award also provides:

> [T]he Tribunal declares that there is no debt owing by Claimant [HPD] to the Respondent/Counter-Claimant [Shaw], that Respondent/Counter-Claimant's Lien Claim is now moot, that Respondent/Counter-Claimant no longer has any rights or privileges based on its Work performed under the Contract with Claimant pursuant to Louisiana Revised Statutes 9:4801 et seq. with respect to the property owned by Shintech or any security interest, privilege, attachment, lien, or encumbrance based on its Work performed under the Contract with Claimant on such property or on the title to such property, and therefore Respondent/Counter-Claimant is ordered to cancel the Lien Claim. (Rec. Doc. 38-3 at 2).

The Award also provides: "[i]f not paid within 30 days of the date of this Award, interest shall accrue in accordance with Louisiana law on the awarded amounts[.]" (Rec. Doc. 38-3 at 3). In its Motion, HPD requests several other forms of relief, including (1) attorneys' fees for the time since the Award was made, and (2) an order that Shaw pay any premiums which HPD paid to maintain the bond for removal of Shaw's lien. (Rec. Doc. 41 at 5-6).

The Court confirms the Award and interest on it, but declines to award the additional relief requested by HPD. "Intervention by the court to award additional relief would be inconsistent with

the language and policy of the Federal Arbitration Act." *Glover v. IBP, Inc.*, 334 F.3d 471, 477 (5th Cir. 2003), *citing Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578 (5th Cir. 1986) ("where the parties made an agreement intended to avoid court litigation by resolving the entire dispute through arbitration, intervention by the court to award additional relief would be inconsistent with the language and policy of the Federal Arbitration Act"). Each party must bear the costs of the attorneys' fees they incurred by making these Motions.

**IV. Conclusion**

For the foregoing reasons,

IT IS ORDERED that Shaw Constructors, Inc.'s Motion for Summary Judgment to vacate the Arbitration Award is DENIED.

IT IS FURTHER ORDERED that HPD, LLC's Motion for Summary Judgment is GRANTED, to the extent that the Award of the Arbitrators dated June 30, 2010 is confirmed and legal interest is awarded, and DENIED to the extent that it requests an Order that Shaw pay HPD's costs, attorneys' fees, and expenses incurred in confirming the Award, and that Shaw pay HPD any premiums HPD paid after the date of the Award to maintain the Bond for Removal of Lien.

New Orleans, Louisiana, this 25th day of October, 2010.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**